STATE of Missouri, Respondent,

v.

Bob MILES and Ancel Shepard, Appellants.

No. 44748.

Supreme Court of Missouri.

Division No. 1.

Oct. 10, 1955.

Tom A. Shockley, Waynesville, for appellants.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Appellants, Bob Miles and Ancel Shepard (hereinafter called defendants), were convicted of felonious assault under the provisions of Section 559.190 (all statutory references herein are to RSMo 1949, V.A. M.S.). The punishment of Miles was fixed by the jury at six months' imprisonment in the county jail and a fine of $250. Shepard was assessed a fine in the same amount and imprisonment for three months.

The evidence presented on behalf of the State justifies the following statement of facts. At about one o'clock on Saturday afternoon, July 31, 1954, Jay White, the prosecuting witness, parked his car on the main street of Edgar Springs, in Phelps County, Missouri. After eating lunch he began to contact persons in the business district in the interest of his campaign for re-election to the office of prosecuting attorney of that county.

Louis Miles, the father of defendant Bob Miles, had operated a tavern in Edgar Springs prior to June 1, 1954. He apparently was unable to obtain a renewal of the license which expired on that date. It may be inferred that certain of the interested parties, including Bob Miles, were of the opinion that Jay White had been instrumental in causing the tavern to be closed. Miles, Robert Hart and two other men were seated in an automobile parked next to Jay White's car. White approached this car and began distributing campaign cards. Miles and Hart then got out of the car and Miles engaged Mr. White in a conversation about closing the tavern.

The prosecuting witness described the assault and the events immediately prior thereto as follows: "I handed out a card and Bob Miles refused to take it and immediately jumped out of the car, and he said, 'Damn you, I want to talk to you about this tavern.' So I walked around behind my car, to get in my car. Miles ran around the front end of my car and got around to the door. Bobby Hart ran around the Mercury and around my car and followed me in and had me cornered between Mr. Joe Hill's truck and my car. Bob Miles did all of the talking. He said, 'We have got a score to settle with you and we are going to do it.' And he repeated that several times. When I reached for the door, he said, 'Don't get in your car.' And at the same time he said that, Hart was standing there, more or less behind me, and he had one hand kinda back behind him. Miles had his fist drawn on me, and every time that Miles would come a little closer, why Hart would step up a step or two nearer. So I told both of them, Miles and Hart both, 'that I didn't want any trouble with them, that I was just the man that tried to enforce the law in the county, that I didn't know them.' And he, Miles, said to me, 'It won't do you any good to try to talk us out of this.' And every time I would try to open the door he would take a step or two toward me as though he were going to hit me, with his fist drawn. I took ahold of the door and started to open the door to get in my car, and Bob Miles struck at me, and just as he did that, I felt a heavy blow on the back portion of my head. And just as I went down, I struck or shoved at Miles. I don't remember when they struck me in the face. The next thing I remembered was I did feel someone hanging on to my legs, and I remember calling for help. And finally I got loose from them, and I saw Ancel Shepard just leaving me."

After Miles and Hart began beating White, defendant Shepard (the father-in-law of Miles) came from across the street and grabbed White around the legs. He contended at the trial that he did this in order to break up the fight, but it is perhaps significant that while he was holding him, the other two continued to beat White. Shortly after Shepard grabbed him, Mr.

White fell to the ground and the evidence indicates that thereafter Miles and Hart engaged in kicking him.

Witness Boyd testified that while Bob Miles was seated in the car with the other men he overheard him say, "This is White's car. We know where he is at and that is the son-of-a-bitch we are looking for. He caused us to pay a fine of $100, without a warrant, and busted up the tavern."

Bob Hart (a son-in-law of Louis Miles) apparently fled after the occurrence we have described and had not been apprehended at the time of the trial. Jay White was severely injured in the affray but was able to drive back to his home in Rolla. Dr. Harry H. Davis, who examined him that afternoon, described his injuries as "laceration over the occipital region; that is the back part of the head. The eyes were dark, bloodshot, swollen, more especially the right; there was a laceration above the right eye. It took six sutures in the occipital wound to close it, took seven over the eye. His head was discolored and swollen throughout the entire portion of the head. His right shoulder was swollen and discolored. This man was in bed when I made this examination."

In the trial of this case Jay White, the prosecuting attorney, disqualified himself because he was the prosecuting witness and the State was represented by Grover C. Huston, Assistant Attorney General, and J. Ben Searcy, Special Assistant Attorney General.

Defendant Bob Miles presented evidence to the effect that White struck him first and he therefore contended that he hit White in the defense of himself. As already indicated, Shepard contended that he did not assault White but "legged him" to help break up the fight.

At the outset defendants contend that the court erred in giving instruction number two which permitted the jury to find them guilty of felonious assault (without malice). Specifically, it is urged that the defendants could not be convicted of that offense, and that only common assault should have been submitted because the State failed to prove that there was a blunt instrument or other dangerous weapon used in the assault. The amended information charged the crime of assault with intent to kill with malice aforethought, in the language of Section 559.180, and alleged that defendants "did make an assault with their hands and feet and with a certain blunt instrument which is unknown to the informant." The instruction complained of was a submission under Section 559.190 and required a finding that defendants "did make an assault with their fists, feet, and with a certain blunt instrument and wounded the said Jay White by striking, beating and kicking him with intent * * *."

■ There is some evidence to indicate that an instrument may have been used by Bob Hart in the assault as White testified to the following: "Q. When did you lose consciousness, if you remember? A. Just immediately after I felt the heavy blow on the back of my head, which felt like some instrument wrapping around the back of my head." However, we need not determine whether this was sufficient evidence to authorize a finding that such an instrument was used, as there is no requirement for conviction of assault with intent to kill without malice, that a dangerous, deadly or any other type of weapon be used. Section 559.190, under which defendants were convicted, contains no provision that the assault or beating be accomplished by use of a weapon. The instruction required the jury to find all of the elements of the offense, as defined in said section, before authorizing a conviction. It was therefore sufficient and amply supported by evidence. The use of the phrase, "with a certain blunt instrument," in the submission was unnecessary and should be treated as surplusage. State v. Spaugh, 199 Mo. 147, 97 S.W. 901; State v. Hacker, Mo.Sup., 214 S.W.2d 413.

■■ Next, the defendants argue that their conviction was the result of bias and prejudice, on the part of the jury, which was brought about by the fact that the person alleged to have been assaulted was the prosecuting attorney. No proof to support this assignment was offered upon the

hearing of the motion for new trial. Defendants do not point to any trial incident appearing in the record which would tend to show that the jury was prejudiced against them. They cite no case to support this contention. Apparently, we are asked to rule as a matter of law that the mere fact that the prosecuting witness is the prosecuting attorney of the county would cause the jury to be biased and prejudiced against the defendants. This we cannot do. There appears to be no logical basis for this contention. We have carefully examined the transcript with this assignment in mind and find nothing therein to indicate any prejudice against these defendants. Moreover, the punishment assessed was very moderate when compared with the maximum of five years' imprisonment permitted by the statute. This would seem to be an affirmative indication that the jury was not motivated by any feeling of passion or prejudice against these defendants.

■ The final complaint of the defendants relates to the alleged prejudicial argument of the Special Assistant Attorney General. The arguments of counsel do not appear in the transcript except that the portion of which defendants complain purports to be contained in the unverified motion for new trial. These remarks are therefore not before us for review. In State v. Batey, Mo.Sup., 62 S.W.2d 450, 452, this court said: "The motion for new trial does assign as error certain alleged remarks of the prosecuting attorney therein set out. But the bill of exceptions does not show those remarks, nor is there anything in the record to show that they were made. Such allegations in a motion for a new trial do not prove themselves. The statement in said motion that the remarks were made is no evidence of the alleged fact." See also, State v. Hampton, Mo.Sup., 172 S.W.2d 1, and State v. York, Mo.Sup., 142 S.W.2d 91.

We have examined the record and find no error therein. The information is in proper form and charges the defendants with the crime of assault with intent to kill with malice aforethought. The verdicts are in proper form and responsive to the issues. Defendants were granted allocution. The judgments and sentences are responsive to the verdicts. We have concluded that the defendants were afforded a fair trial and that the judgments should be affirmed.

It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.